UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R**ONALD** L**ABAN** S**EGARS**,

    Petitioner,

    v.

U**NITED** S**TATES OF** A**MERICA**,

    Respondent.

_____/

Criminal Case No. 16-20222-3

S**ENIOR** U.S. D**ISTRICT** J**UDGE**
A**RTHUR** J. T**ARNOW**

U.S. M**AGISTRATE** J**UDGE**
R. S**TEVEN** W**HALEN**

**O**RDER **G**RANTING **P**ETITIONER'S **M**OTION FOR **C**OMPASSIONATE **R**ELEASE **[415]**

On May 22, 2020, Ronald Segars filed a Motion for Compassionate Release [415] from his incarceration at Federal Correctional Institution ("FCI") Morgantown. On May 29, 2020, the parties filed concurrent briefs [419] [420]. The Court held oral argument on the motion on June 3, 2020. After the hearing, the Court ordered the parties to provide supplemental records. (ECF No. 431). On June 5, 2020 and June 10, 2020, Petitioner submitted supplemental records (ECF No. 430, 435). For the reasons stated below and on the record, the Court **GRANTS** Segars's Motion for Compassionate Release [415].

**F**ACTUAL **B**ACKGROUND

On December 21, 2017, the Court sentenced Mr. Segars to a mandatory minimum of 60 months (5 years) of imprisonment for Conspiracy to Possess with

Intent to Distribute Controlled Substances (Heroin), violation of 21 U.S.C. §§ 841(b)(1)(A), 841(a)(1), and Felon in Possession of a Firearm, in violation of 18 3571(b)(3) 922(g)(1). (ECF No. 322). His projected release date is June 14, 2022. (ECF No. 419-2, PageID. 3294).

Mr. Segars is 48 years old. He seeks release due to hypertension, and a stroke that he suffered before incarceration. (ECF No. 421, PageID. 3239). His stroke resulted in right side paralysis. (*Id.*). Although he is now is able to walk without a cane, he still experiences the stroke's lingering effects. (*Id.*). On May 7, 2020, due to the COVID-19 pandemic, Segars asked for compassionate release from his warden. (ECF No. 435-2, PageID. 3746-48). It was denied on May 26, 2020. (ECF No. 435-3, PageID. 3751).

## ANALYSIS

The compassionate release statute states the following in relevant part.

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    **(i)**  extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582.

Because 30 days has lapsed since the warden's receipt of Segars's request for compassionate release, there is no dispute that Segars has exhausted his administrative remedies. *See United States v. Alam*, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020). The Court thus has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether Segars poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. <u>Extraordinary and Compelling Reasons for Release</u>

  In order to determine if extraordinary and compelling reasons exist to release Segars, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement recites the following:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.--**
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

>    **(ii)** The defendant is--
>       **(I)** suffering from a serious physical or medical condition,
>       **(II)** suffering from a serious functional or cognitive impairment, or
>       **(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover
>       [. . .]
>    **(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Segars has presented "Other Reasons" in combination with his serious medical conditions, to warrant compassionate release. While the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. *See, e.g.*, Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. Times (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); *See, e.g.*, Courtney Bublé, *Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says*, Government Executive (April 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent-

danger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines).

Furthermore, the persuasive precedent for granting compassionate release under the current circumstances is overwhelming. *United States v Andre Williams*, Case No. 04-cr-95/MCR, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); *see also United States v. Teresa Ann Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020), at *2.

Segars argues that his underlying condition warrants similar treatment. Specifically, he seeks release due to his hypertension. (ECF No. 421, PageID. 3239). The Center for Disease Control ("CDC") states that people with hypertension are vulnerable because, a respiratory illness from COVID-19 could "make it harder for [a person's] heart to work, [which] can lead to a worsening of COVID-19 symptoms." *Groups at Higher Risk for Severe Illness*, Centers for Disease Control

and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-highim-risk.html (last visited June 11, 2020).

In opposition, the Government argues that Segars's condition is not severe enough to be a risk factor because he has primary hypertension, rather than pulmonary hypertension. First, although the CDC only lists pulmonary hypertension on its list of risk factors, the Court reads the CDC's list to be merely inclusive rather than exclusive and exhaustive. *Id.* at ("[s]erious heart conditions, *including* . . . pulmonary hypertension, may put people at higher risk for severe illness from COVID-19.") (emphasis added).

Second, the rapidly changing nature of science surrounding this novel virus displaces the CDC as the sole medical authority on COVID-19 risk factors. In fact, many medical sources, including the Head of Internal Medicine at Henry Ford Hospital, explicitly indicate that people with primary hypertension are more vulnerable to the debilitating effects of the virus. (*See* ECF No. 430-1, PageID. 3692 ("hypertension is highly prevalent in the most severe cases of COVID. Early research shows that hypertension is an independent risk factor in some patients, increasing the severity of illness . . . The diagnosis of hypertension at any level could plausibly lead to more severe COVID.")). Third and most significantly, although primary hypertension is a common disease, Segars's hypertension resulted in a

stroke, the effects of which he is still suffering from — indicating that his condition is more severe than others'. (ECF No. 421, PageID. 3239).

Furthermore, the Court's concern for Segars's safety is not dissuaded by the fact that FCI Morgantown has no reported cases of COVID-19. The prison's report of zero confirmed cases is more likely a result of a lack of testing than a lack of the virus' presence in the prison. Especially since the county where the prison is located is currently reporting 129 confirmed cases and 5 deaths, the Court is concerned that inmates and staff members are interacting with one another as normal and blissfully unaware of the virus spreading throughout the prison. *Coronavirus Disease 2019*, WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, https://dhhr.wv.gov/COVID-19/Pages/default.aspx (last visited June 11, 2020). Another court in our district recently found the following about the conditions at FCI Morgantown:

> Mr. Agomuoh has been transferred within the prison and now has a new roommate. They're sleeping within ten feet of each other. They're eating elbow to elbow . . . There's no medical treatment after 5:00 PM. He would have to wait until the next day. There's usually—he reports only one doctor on staff with a handful of nurses for the population of I believe almost 700. (Tr. Pgs. 5-6.) The United States did not dispute this description of current conditions at FCI Morgantown. There are currently no confirmed cases of COVID-19 at FCI Morgantown, though it is not clear whether the facility is conducting widespread COVID-19 tests for inmates or staff.

*United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113, at *2–3 (E.D. Mich. May 18, 2020). During the Court's hearing, Segars corroborated many of these

allegations. Considering the number of infected people Segars is unknowingly in contact with, continuing to incarcerate him under these conditions could be a lethal decision. The Court refuses to join FCI Morgantown in its ignorance of a deadly virus hidden in plain sight. Therefore, extraordinary and compelling reasons exist for Segars's immediate compassionate release.

2. Danger to the Community

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Court finds that Segars's conduct in prison indicates that he presents a low risk of recidivism. Segars's disciplinary history is spotless and he has been identified as a minimum recidivism risk by the Bureau of Prisons ("BOP"). (ECF No. 419-3, PageID. 3206; ECF No. 435-2, PageID. 3750). Furthermore, Segars has taken several vocational classes, including: CDL, Small Business Management, Real Estate and Home Renovation. (ECF No. 419-5, PageID. 3209-10).

Segars states that upon reentry, he will reside with his fiancé, find employment, and receive rental income from a house he owns in Detroit. Considering that Segars has taken responsibility for his crimes, has resolved to stay away from crime and his family is willing to take him in and support his reentry, the Court sees no reason why he cannot serve the remainder of his sentence at home.

3. <u>Section 3553(a) Factors</u>

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the June 3, 2020 hearing. Segars's crimes were serious, but the quality of his time in prison has shown that he has the educational and correctional tools to live a life apart from crime. Finally, the potential danger of Segars's medical conditions outweigh any marginal benefit he would receive from finishing his remaining time in prison. Compassionate release is therefore in line with the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Petitioner's Motion for Compassion Release [415] is **GRANTED**.

**IT IS FURTHER ORDERED** that Segars be **IMMEDIATELY RELEASED** to begin his 4-year term of **SUPERVISED RELEASE**, as outlined by the January 5, 2018 Judgment (ECF No. 322).

**SO ORDERED**.

Dated: June 15, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge